In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999–2000 No. 172, No. 173, No. 174, and No. 175,

Douglas Bruce and Jeffrey Wright, Petitioners,

v.

William Hobbs, Michael McLachlan and Douglas Brown, Title Board, Respondent.

No. 99SA259.

Supreme Court of Colorado, En Banc.

Nov. 1, 1999.

**244**

Douglas Bruce, Pro Se, Colorado Springs, Colorado.

No Appearance by or on behalf of Petitioner Jeffrey Wright.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorneys for Title Board.

PER CURIAM.

Petitioners, registered voters in the State of Colorado and proponents of four proposed initiatives for 1999–2000, designated No. 172, No. 173, No. 174, and No. 175,[1] ask the court to review the refusal of the Title Board to set a title, ballot title and submission clause, and summary (collectively, "title") for each initiative, under section 1–40–107(2), 1 C.R.S. (1999). The Board refused to set titles for the initiatives because each initiative contains multiple subjects in violation of Colorado Constitution article V, section 1(5.5). The Board found that each initiative contains local tax cuts, and initiatives 172 and 173 contain mandatory restrictions on state spending, while initiatives 174 and 175 contain an audit requirement not necessary and proper to the local tax cuts.

Petitioners claim that the Board misapplied Colorado's constitutional rule requiring that initiatives contain no more than one subject. *See* Colo. Const. art. V, § 1(5.5). We disagree and affirm the Board's reasoning, which led it to refuse to set a title for each proposed measure. Proposed initiatives 172 and 173 violate the single-subject requirement because they impose mandatory restrictions on state spending, which is a separate subject from local tax cuts. Proposed initiatives 174 and 175 violate the single-subject requirement because they require the state to audit a broad range of tax and spending limits, distinct from the local tax cuts that the initiatives contain.

### I. The Single–Subject Requirement and the Standard of Review

Colorado's Constitution, article V, section 1(5.5) provides, No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title. If a measure contains more than one provision, then it may still be considered to have one subject if the provisions are all necessary and proper to each other. *See* 1–40–106.5(e)(1), 1 C.R.S. (1999); *In re Public Rights in Waters II*, 898 P.2d 1076, 1079 (Colo.1995). In other words, a measure violates the single-subject requirement if its provisions are not dependent upon or connected with each other. *In re Proposed Initiative (Amend TABOR 25)*, 900 P.2d 121, 125 (Colo.1995).

1. The proposed initiatives are attached as an appendix.

■ The court may not interpret the merits of proposed initiatives or analyze the application an initiative might have. *See In re Proposed Initiative for 1997–98 No. 30,* 959 P.2d 822, 825 (Colo.1998). However, the court must, of necessity, engage in a limited analysis of the meaning of each complex initiative to determine what is the subject or subjects of the initiative. *See id.* Hence, we engage in a limited inquiry, which is essential to determine whether the constitutional prohibition against initiative proposals containing multiple subjects has been violated. *See* Colo. Const. art. V, § 1(5.5); *In re Proposed Initiative No. 30,* 959 P.2d at 825. We note that some inquiry is essential, since each initiative is densely worded.

## II. Initiatives 172 and 173

■ The first sentence of Initiative 172[2] contains proposed cuts in a variety of local taxes and fees, starting at $25 and increasing year after year:

A $25 tax cut, increased $25 yearly (to $50, $75 ... ), shall lower each tax in each tax bill for each 2001 and later district: utility customer and occupation tax and franchise charge; vehicle sales, use, and ownership tax; yearly income tax; property tax; income and property tax equal to yearly revenue from sales and use taxes on food and drink other than tobacco and alcohol; and income tax equal to yearly revenue from estate taxes.

Proposed initiative 172. The first sentence of initiative 173 is substantially similar.[3]

While the first sentence of the initiatives deals with local tax cuts, other parts of the initiatives deal with state spending. Part of the second sentence[4] of initiatives 172 and 173 provides that whenever there is a revenue increase (over the previous year's state spending), the state *must* use that money to replace local revenue lost due to the tax cut.[5] This replacement may not, however, use excess revenue.

The state shall replace local revenue, but not with excess state revenue, when replacement does not reduce year-to-year total state spending on state programs, shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance, and may limit local acts increasing replacement costs....

This means that any increase in state revenue from one year to the next would have to be used to replace local lost revenues. First, the initiatives require that local taxes be reduced, thus lowering local government revenues. Then, if the state collects more revenue than it spent the previous year on state programs, the amount of the increase (beyond what was spent on state programs the prior year) must be paid to local governments to replace lost local revenues. If the revenue from a state tax increase were not completely used up by replacing lost local revenue, only then could this extra revenue be used to increase spending on state programs.

However, because the initiatives prohibit paying localities with excess revenue, the second sentence of the initiatives limits state spending. Excess revenue is revenue actually collected that exceeds the spending limits in article X, section 20(7)(d) of the Colorado Constitution without approval by the electorate, or revenue actually collected by a specific tax increase above the amount of the increase as approved by the voters. *See Havens v. Board of County Comm'rs,* 924 P.2d 517, 521 (Colo.1996); *City of Aurora v. Acosta,* 892 P.2d 264, 268 (Colo.1995). Under article X, section 20(1), such revenue must be returned to the taxpayers. The amount of state revenue available to replace

---

2. We note that the first sentence consists of 75 words and approximately 10 clauses.

3. Proposed initiative 173 contains a slight variation in this language. Instead of affecting each "utility customer and occupation tax and franchise charge, initiative 173 affects each utility customer, occupation and franchise tax." We do not address this variation, since it is irrelevant to our holding.

4. In its entirety, the second sentence contains 141 words and 14 clauses.

5. Initiatives 172–173 provide an exception to the local tax cuts which is not contained in initiatives 174–175; local *property* tax cuts would *not* occur unless they could be replaced by state funding ((8)(d) property tax cuts shall occur only if replaced by state revenue).

lost local revenue is limited by the prohibition on using excess revenue, to the point where any revenue increase will likely be dedicated to replacing local lost revenue. The provision in initiatives 172–173 is another way of saying that the replacement of local lost revenue must be within all tax and spending limits, namely the limits in article X, section 20. *See, e.g., In re Proposed Initiative for 1997–98 No. 84*, 961 P.2d 456, 457, 460 (Colo.1998). As a result, it appears unlikely that there could be an increase in state spending after replacing lost local revenue. Thus, the initiative would freeze total state program spending at current dollar amounts.

*In re Proposed Initiative No. 84* held that a ballot initiative similar to initiatives 172–175 contained multiple subjects where, in addition to providing for local tax cuts, it resulted in mandatory reductions in state spending. *See id.* at 460–61. The limit on state spending resulted because the initiative provided that the state must replace local revenue within all tax and spending limits. *See id.* Thus, given that the Colorado Constitution, article X, section 20 places strict limits on state tax increases, diverting funds to replace lost local revenue would necessarily result in steep cuts in state funded projects. *See id.* at 460.

Thus, the rule from these prior cases is that any mandatory, automatic reduction in state spending is a separate subject and not necessary and proper to the local tax cut common to all these titles. *See id.* at 460–61; *accord In re Proposed Initiative for 1999– 2000 No. 25*, 974 P.2d 458, 466–67 (Colo. 1999).

Although initiatives 172–173 would not cause a mandatory *reduction* in state spending, they provide for a new mandatory *restriction* on state spending in addition to mandating local tax cuts. The reasoning of

*In re Proposed Initiative No. 84* applies in full force. *See* 961 P.2d at 460–61. We see no difference legally between a reduction and a restriction in state spending. Both a mandatory reduction and a mandatory restriction limit state spending, which is not necessarily and properly related to the subject of local tax cuts. Thus, initiatives 172 and 173 contain multiple subjects in violation of Colorado Constitution article V, section 1(5.5). *See id.*

### III. Initiatives 174–175

Initiatives 174 and 175 contain the same local tax cut found in initiatives 172 and 173.[6] However, where in certain circumstances, initiatives 172–173 contain a mandatory replacement of lost local revenue, initiatives 174–175 are purely permissive. By replacing the state shall with the state may replace local lost revenue, initiatives 174–175 *allow* the state to replace local lost revenue at any time (even when the replacement would reduce spending on state programs). The language in initiatives 174 and 175 differs from that in initiatives 172–173 as follows (language in initiatives 172 and 173 but not in initiatives 174 and 175 is stricken out; language present only in initiatives 174–175 is underlined):

> The state shall may replace local revenue, but not with excess state revenue, when replacement does not reduce year-to-year total state spending on state programs, may limit local acts increasing replacement costs, and shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance, and may limit local acts increasing replacement costs; ....[7]

Initiatives 174–175 never *require* the replacement of lost local revenue. Such payments to localities are within the legislature's power already. *See* Colo. Const. art. X, 17; *Dempsey v. Romer*, 825 P.2d 44, 51 (Colo. 1992). Thus, this language has no force.[8]

As quoted above, each initiative also imposes a duty on the state to enforce and

---

6. Initiative 175 differs from initiative 174 in exactly the same manner as initiative 173 differs from initiative 172. *See supra* note 2. This difference is irrelevant here, as it was with regard to initiatives 172 and 173.

7. Note that the phrase, may limit local acts increasing replacement costs, was simply moved

within the sentence. This is a purely cosmetic change.

8. Since the language in initiatives 174–175 regarding the replacement of local lost revenue is superfluous, it could not result in a mandatory reduction in state spending, and thus the reasoning employed with regard to initiatives 172 and

audit tax and spending limits imposed under Colorado Constitution article X, section 20(4). Each of the four proposed measures requires that the state "shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance."

We have noted that article X, section 20 contains multiple subjects and would have been unconstitutional had the single-subject requirement applied when it was proposed. *See In re Amend TABOR 25,* 900 P.2d at 126. We reason by analogy that an initiative dealing with a broad portion of section 20 also contains multiple subjects. The audit provision is not limited to the tax cuts proposed by initiatives 172–175. If any of these proposed constitutional measures became law, the state would be required actively to review and enforce the revenue and spending limits as well as the creation of any "multiple-fiscal year direct or indirect district debt or financial obligation" by any political subdivision of the state. Colo.Const.art. X, § 20(4)(b). The duties imposed by this audit thus extend to several other tax and spending limits unrelated to the tax cuts proposed by these initiatives, but found elsewhere in article X, section 20. Each of the four proposed initiatives requires both tax cuts and separate audit requirements for each political subdivision unrelated to the tax cut proposed. Therefore, we conclude that proposed initiatives 174-175 each contain multiple subjects because there is no necessary and proper connection between establishment of the tax cut and audit responsibilities that relate to the enforcement of other constitutional provisions.

### IV. Conclusion

Hence, we uphold the action of the Board in refusing to set titles for proposed initiatives 172-174.

### APPENDIX

IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999-2000 No. 172

Be it Enacted by the People of the State of Colorado:

Article X, section 20, The Taxpayer's bill of Rights, is amended to add:

(8)(d)Tax cuts. A $25 tax cut, increased $25 yearly (to $50, $75 (3)27), shall lower each tax in each tax bill for each 2001 and later district: utility customer and occupation tax and franchise charge; vehicle sales, use, and ownership tax; yearly income tax; property tax; income and property tax equal to yearly revenue from sales and use taxes on food and drink other than tobacco and alcohol; and income tax equal to yearly revenue from estate taxes. The state shall replace local revenue, but not with excess state revenue, when replacement does not reduce year-to-year total state spending on state programs, shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance, and may limit local acts increasing replacement costs; (8)(d) property tax cuts shall occur only if replaced by state revenue; (8)(d) tax cuts shall not lower excess revenue; joint income tax returns equal two tax bills; (8)(d) creates fundamental rights and shall be strictly construed--good faith and substantial compliance are insufficient--and not balanced or harmonized with conflicting laws; anyone may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 60 days of filing; and attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.

IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999-2000 No. 173

Be it Enacted by the People of the State of Colorado:

Article X, section 20, The Taxpayer's Bill of Rights, is amended to add:

(8)(d)Tax cuts. A $25 tax cut, increased $25 yearly (to $50, $75 (3)27), shall lower each tax in each tax bill for each 2001 and later district: utility customer, occupation tax and

173 is inapplicable. *See In re Proposed Initiative* No. 84, 961 P.2d at 460–61.

franchise tax; vehicle sales, use, and ownership tax; yearly income tax; property tax; income and property tax equal to yearly revenue from sales and use taxes on food and drink other than tobacco and alcohol; and income tax equal to yearly revenue from estate taxes. The state shall replace local revenue, but not with excess state revenue, when replacement does not reduce year-to year total state spending on state programs, shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance, and may limit local acts increasing replacement costs; (8)(d) property tax cuts shall occur only if replaced by state revenue; (8)(d) tax cuts shall not lower excess revenue; joint income tax returns equal two tax bills; (8)(d) creates fundamental rights and shall be strictly construed--good faith and substantial compliance are insufficient-- and not balanced or harmonized with conflicting laws; anyone may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 60 days of filing; and attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.

IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999-2000 No. 174

Be it Enacted by the People of the State of Colorado:

Article X, section 20, The Taxpayer's Bill of Rights, is amended to add:

(8)(d)Tax cuts. A $25 tax cut, increased $25 yearly (to $50, $75 (3)27), shall lower each tax in each tax bill for each 2001 and later district: utility customer and occupation tax and franchise charge; vehicle sales, use, and ownership tax; yearly income tax; property tax; income and property tax equal to yearly revenue from sales and use taxes on food and drink other than tobacco and alcohol; and income tax equal to yearly revenue from estate taxes. The state may replace local revenue, but not with excess state revenue, may limit local acts increasing replacement costs, and shall enforce and audit yearly each district tax and spending and

(4)(b)limit for strict compliance; (8)(d) tax cuts shall not lower· excess revenue; joint income tax returns equal two tax bills; (8)(d) creates fundamental rights and shall be strictly construed--good faith and substantial compliance are insufficient--and not balanced or harmonized with conflicting laws; anyone may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 60 days of filing; and attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.

IN THE MATTER OF THE TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY FOR 1999-2000 No. 175

Be it Enacted by the People of the State of Colorado:

Article X, section 20, The Taxpayer's Bill of Rights, is amended to add:

(8)(d)Tax cuts. A $25 tax cut, increased $25 yearly (to $50, $75 (3)27), shall lower each tax in each tax bill for each 2001 and later district: utility customer, and occupation, and franchise tax; vehicle sales, use, and ownership tax; yearly income tax; property tax; income and property tax equal to yearly revenue from sales and use taxes on food and drink other than tobacco and alcohol; and income tax equal to yearly revenue from estate taxes. The state may replace local revenue; but not with excess state revenue, may limit local acts increasing replacement costs, and shall enforce and audit yearly each district tax and spending and (4)(b) limit for strict compliance; (8)(d) tax cuts shall not lower excess revenue; joint income tax returns equal two tax bills; (8)(d) creates fundamental rights and shall be strictly construed--good faith and substantial compliance are insufficient--and not balanced or harmonized with conflicting laws; anyone may sue in the supreme court to enforce (8)(d), which suit shall be orally argued and decided within 60 days of filing; and attorney fees and costs to enforce (8)(d) *shall always* be paid to successful plaintiffs only.