In the Matter of the TITLE AND BALLOT TITLE AND SUBMISSION CLAUSE FOR 2005–2006 # 55,

Manolo Gonzalez–Estay, objector, Petitioner

v.

Richard D. Lamm, Waldo Benavidez & Fred Elbel, proponents, and William A. Hobbs, Allison Eid, and Dan Cartin, Title Board, Respondents.

No. 06SA20.

Supreme Court of Colorado, En Banc.

June 12, 2006.

As Modified on Denial of Rehearing June 26, 2006.*

* Justice COATS and Justice RICE would grant the Petition.

Isaacson Rosenbaum P.C., Mark G. Grueskin, Kara Veitch, Denver, CO, Attorneys for Petitioner Manolo Gonzalez–Estay.

Richard D. Lamm, Denver, CO, pro se.

Robert M. Hardaway, University of Denver Sturm College of Law Denver, CO, Attorney for Proponents Richard D. Lamm, Waldo Benavidez and Fred Elbel.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General,

State Services Section, Public Officials Unit, Denver, CO, Attorneys for Title Board.

Justice MARTINEZ delivered the Opinion of the Court.

Petitioner, Manolo Gonzalez–Estay, brought this original proceeding under section 1–40–107(2), C.R.S. (2005), to challenge the action of the initiative title setting board (the "Board") setting the title and ballot title and submission clause ("titles") for a proposed ballot initiative ("Initiative # 55" or "Initiative"). Initiative # 55 prohibits the State of Colorado, as well as all cities, counties, and political subdivisions thereof, from providing any non-emergency services to persons who are not otherwise lawfully present in the United States. Petitioner argues the Board lacked jurisdiction to set the title for Initiative # 55 on the basis that it violates article V, section 1(5.5) of the Colorado Constitution because it contains multiple subjects and amends or repeals unrelated provisions of the constitution.

We agree that Initiative # 55 contains multiple subjects connected only by the broad theme of restricting non-emergency services. The concept of a single subject at first glance appears straightforward. However, an initiative may be offered as a single subject by stating the subject in broad terms. If an initiative states vague terms, then it may appear to present a single subject. But when the details necessary to understand the subject are considered, the initiative may involve separate subjects. To avoid subjective decision-making in this arena, we have developed an analysis to determine whether an initiative contains unrelated subjects contained within an overarching theme. Our case law requires us to examine an initiative to determine its purposes and whether they are related to the central theme of an initiative.

Applying this well-established analysis, we observe that the initiative contains at least two subjects: decreasing taxpayer expenditures on behalf of people not lawfully present- in Colorado by terminating services benefiting the welfare of individuals and restricting unrelated administrative services. Accordingly, we reverse the action of the Board and remand this matter to it with directions to strike the title and return Initiative # 55 to its proponents.

## I. Facts and Proceedings

In 2004, a prior version of Initiative # 55 was presented to the Board. The measure, known as Initiative 2003–2004 # 88 ("Initiative # 88"), proposed to amend article V of the Colorado Constitution by adding section 51, "Restrictions on Non–Emergency Services." Section 51 provided that Colorado's provision of "non-emergency services" would be restricted to lawfully present citizens and aliens:

(1) Except as mandated by federal law, the provision of *non-emergency services* by the State of Colorado or any city, county or other political subdivision thereof, *is restricted to citizens of and aliens lawfully present in the United States of America.*

(2) Any person lawfully residing in the State of Colorado shall have standing to sue the State of Colorado or any county, city or other political subdivision of the State of Colorado to enforce this section.

(a) Courts of record of the State of Colorado shall have jurisdiction to hear cases brought to enforce this section.

The General Assembly may provide reasonable and appropriate limits on the time and manner of suits brought under this section.

(3) The General Assembly shall have the authority to implement this section by definitions and other appropriate legislation.

(Emphasis added.) Initiative # 88 was approved as to single subject matter by the Board.

Petitioner and Ramon Del Castillo filed a motion for rehearing. They argued both that Initiative # 88 contained multiple subjects and the title did not accurately reflect the content of the measure. The Board denied the motion.

To this court, Petitioner and Castillo argued only that the title "is misleading, does not correctly and fairly express the true meaning of the initiative, does not unambiguously state the principle of the provision to be added to the Constitution, and will lead to

voter confusion...." Petitioner and Castillo did not argue the initiative contained multiple subjects contrary to Colorado Constitution article V, section 1(5.5). We affirmed the action of the Board without opinion. *In the Matter of the Title, Ballot Title & Submission Clause for 2003–04 # 88* (No. 04SA95, May 6, 2004).

Sufficient signatures were not obtained to meet the deadline for the 2004 November election. On December 21, 2005, William G. Herron and Janice Herron submitted Initiative # 55, entitled "Restrictions on Non–Emergency Services," to the Board for inclusion on the 2006 ballot. Initiative # 55 repeated, with minor changes, the provisions of Initiative # 88. At the January 4, 2006, Board hearing, Richard D. Lamm, Waldo Benavidez and Fred Elbel ("Proponents") were designated as the proponents. The Board set the title, Petitioner sought reconsideration before the Board, and the Board denied Petitioner's motion. Petitioner filed a Petition for Review before this court and argues Initiative # 55 violates the single subject requirement.

The text of Initiative # 55 is attached hereto as APPENDIX A. The text of the title and ballot title and submission clause as prepared by the Board are attached hereto as APPENDIX B.

## II. Claim Preclusion and Law of the Case

■ The Proponents contend this court is barred from reviewing the Board's actions because both the doctrine of the "law of the case" and claim preclusion prohibit our reconsideration of the same issues already finally adjudicated by this court in *In re 2003–04 # 88*, including the issue of whether the Proposed Initiative sets forth a "single subject" in compliance with Colorado Constitution article V, section 1(5.5). The Board argues this appeal is barred by claim preclusion. We reject these arguments.

Initially, we note that *In re 2003–04 # 88* was not selected for publication and therefore has no value as precedent. *See* C.A.R. 35(f); *Welby Gardens v. Adams Cty. Bd. of Equalization,* 71 P.3d 992, 999 (Colo.2003). In addition, the principles of claim preclusion and law of the case are inapplicable under this special statutory proceeding. The Board sets the title and submission clause at public meetings. Thereafter, any person presenting an initiative petition or any registered elector who is not satisfied with a decision of the title board has a statutory right to file a motion with the secretary of state. § 1–40–107(1), C.R.S. (2005). Any registered elector who filed a motion for rehearing and is not satisfied with the Board's ruling may file an appeal with the Colorado Supreme Court and thus requires our review:

(2) If any person presenting an initiative petition for which a motion for a rehearing is filed, any registered elector who filed a motion for rehearing is not satisfied with the ruling of the title board upon the motion, then the secretary of state shall furnish such person, upon request, a certified copy of the petition with the titles and submission clause of the proposed law or constitutional amendment, together with a certified copy of ten motions for rehearing and of the ruling thereon. If filed with the clerk of the supreme court within five days thereafter, the matter shall be disposed of promptly, consistent with the rights of the parties, either affirming the action of the title board or reversing it, in which latter case the court shall remand it with instructions, pointing out where the title board is in error.

§ 1–40–107(2), C.R.S. (2005).

■ The statute does not provide an exception for proposed ballot initiatives containing identical or nearly identical language. Consequently, statutory proceedings require the title board and this court to review initiatives even if containing language identical to a previous initiative. Applying claim preclusion or law of the case principles would circumvent this special statutory process and exempt Initiative # 55 from the applicable standards. Hence, we do not apply claim preclusion or law of the case principles here and review Initiative # 55 consistent with the statute.

## III. Single Subject Requirement

Petitioner raises a single subject challenge to Initiative # 55. We first review our previ-

ously established single subject analysis and emphasize that an initiative may neither hide purposes unrelated to its central theme nor group distinct purposes under a broad theme.

Turning to the Initiative itself, we determine that its claimed subject, restricting non-emergency services, is broad and intended to affect all government operations. Against this backdrop, we explore the purposes effected by restricting all non-emergency services not mandated by federal law and identify two distinct, unrelated purposes: reducing taxpayer expenditures by restricting the delivery of benefits in the nature of medical and social services to individuals lawfully present in Colorado and restricting other largely administrative services that do not primarily confer benefits to individuals. Because we determine these purposes are unrelated, we conclude they comprise multiple subjects connected only by a broad and overarching theme.

## A. Single Subject Case Law

■ An extension of the single subject/clear title limitation applicable to bills, *In re Proposed Initiative for "Public Rights in Waters II"*, 898 P.2d 1076, 1078 (Colo.1995), Colorado's Constitution prohibits voter initiatives from containing multiple subjects.[1] Colo. Const. art. V, § 1(5.5); *see also* § 1–40–106.5, C.R.S. (2005). This single subject requirement

> prohibits a single legislative act from addressing *"disconnected and incongruous measures"* that have no *"necessary or proper connection."* This limitation serves to ensure that each legislative proposal depends upon its own merits for passage and *protects against fraud and surprise* occasioned by the inadvertent passage of a *surreptitious provision "coiled up in the folds"* of a complex bill.

*In re Proposed Initiative for 2001–02 # 43*, 46 P.3d 438, 439 (Colo.2002) (internal citations omitted) (citing *In re Breene*, 14 Colo.

401, 404, 24 P. 3, 4 (1890)) (emphasis added). An initiative violates the single subject requirement when it (1) relates to more than one subject and (2) has at least two distinct and separate purposes that are not dependent upon or connected with each other. *See In re "Public Rights in Waters II"*, 898 P.2d at 1078–79; *see also In re Proposed Initiative on Petition Procedures*, 900 P.2d 104, 109 (Colo.1995).

Although our inquiry into single subject compliance is case-specific, we have developed principles addressing the goals of the requirement.

■ First, consistent with the goal of preventing the inadvertent passage of a surreptitious provision, an initiative may not hide purposes unrelated to the Initiative's central theme. *See In re Proposed Initiative for 1997–98 Nos. 84 & 85*, 961 P.2d 456, 460–61 (Colo.1998). For example, we disapproved of an initiative burying unrelated revenue and spending increases within tax cut language because "voters would be enticed to vote for the measure in order to enact the tax cut while not realizing that passage of the measure would simultaneously achieve a purpose not necessarily related to a tax cut." *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d 822, 823 (Colo.1998). Likewise, we held the Board erred in setting a title and summary where the initiative contained mandatory reductions in state spending on state programs, which was a purpose both hidden and unrelated to the central theme of effecting tax cuts. *In re Proposed Initiative for 1997–98 Nos. 84 & 85*, 961 P.2d at 460. We observed that "voters would be surprised to learn that by voting for local tax cuts, they also had required the reduction, and possible eventual elimination of state programs." *Id.; see also In re Proposed Initiative for 2001–02 Nos. 43 & 45*, 46 P.3d 438, 447 (Colo.2002) (single subject requirement intended to prevent "uninformed voting caused by items

---

1. Colorado Constitution article V, section 1(5.5) provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title.... If a measure

contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

concealed within a lengthy or complex proposal").

■ Second, consistent with the goal of prohibiting a single legislative act from addressing disconnected or incongruous measures, an initiative grouping distinct purposes under a broad theme will not satisfy the single subject requirement. *See, e.g., In re Proposed Initiative for 1999–2000 # 200A*, 992 P.2d 27, 30 (Colo.2000). That is, although an initiative may contain several purposes, they must be interrelated. *Id.* In *In re Proposed Initiative for 1997–98 # 63*, 960 P.2d 1192, 1200–01 (Colo.1998), we held the Board erred by fixing the titles and summary of the initiative, entitled "Judicial Qualifications" because it contained "provisions proposing to change the composition, manner of selection, powers and procedures of an independent constitutional body, which were unrelated to judicial qualifications." We observed that the theme of the initiative—the entire judicial branch—therefore could not be considered a single subject. *Id.* Similarly, in *In re "Public Rights in Waters II"*, this court held that grouping the distinct purposes of water conservation district elections and the "public trust doctrine" under the theme of "water" did not satisfy the single subject requirement because such a connection was "too broad and too general" to make them a part of the same subject. 898 P.2d at 1080. Likewise, in *In re Amend Tabor 25*, 900 P.2d 121, 125 (Colo.1995), the umbrella term "revenue changes" did not sufficiently connect specific tax credits and the amendment of procedures relating to future voter initiatives to satisfy the single subject rule.

■ The initial responsibility for reviewing proposed initiatives, consistent with these principles, resides with the Board. *See* § 1-40-106, C.R.S. (2005). Proponents and the Board emphasize that this court's subsequent review of the Board's actions setting the title and ballot title and submission clause is limited. *See In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d 257, 260 (Colo.1999). In this regard, we may not address the merits of a proposed initiative or construe the future legal effects of an initiative. *In re Title, Ballot Title and Submission Clause for Proposed Initiatives 2001–2002 Nos. 21 & 22*, 44 P.3d 213, 215–16 (Colo.2002); *In re Title, Ballot Title and Submission Clause for Proposed Initiative 2001–02 # 43*, 46 P.3d 438, 443 (Colo.2002).

■ Proponents and the Board nonetheless concede this court must sufficiently examine an initiative to determine whether a measure violates the single subject rule. Indeed, this court has repeatedly stated it will, when necessary, characterize a proposal sufficiently to enable review of the Board's actions.[2] *See In re Proposed Initiative for 2001–02 # 43*, 46 P.3d at 443 (citing *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 825 n. 2; *In re Proposed Initiative for 1999–2000 # 29*, 972 P.2d at 260 (Colo. 1999)); *see also In re Proposed Initiative for 1999–2000 # 258(A) ("English Language Education in Public Schools")*, 4 P.3d 1094, 1098 (Colo.2000); *In re Proposed Initiative 1997–98 # 62*, 961 P.2d 1077, 1082 (Colo. 1998); *In re "English Language Education" Nos. 21 & 22*, 44 P.3d 213, 216 (Colo.2002); *In re Title, Ballot Title & Submission Clause, and Summary for 1999–2000 Nos. 172–175*, 987 P.2d 243, 245 (Colo.1999); *In re Proposed Initiative for 1997–98 # 84*, 961 P.2d 456, 458 (Colo.1998).

We have characterized proposals to determine unstated purposes and their relationship to the central theme of an initiative. In *In re Proposed Initiative for 1999–2000 # 258(A) ("English Language Education in Public Schools")*, we analyzed a proposed initiative with the stated purpose of requiring all public school students in Colorado to be taught in English. We recognized the additional, unstated purposes present in the amendment of constraining school boards' traditional power to require bilingual education in public schools. 4 P.3d at 1098. We also found, however, that this effect was not a subject separate from the initiative's central theme of requiring English language in-

---

2. In an early iteration of this principle, Justice Mullarkey observed in a concurring opinion that we cannot apply the single subject rule to voter initiatives to amend the constitution without some preliminary interpretation of the proposed initiative. *In re Proposed Initiative on Parental Rights*, 913 P.2d 1127, 1134 (Colo.1996). She emphasized that "[a]n evaluation of whether the component parts of a proposed initiative are connected and are germane to one another, so as to comprise one subject, simply cannot be undertaken in a vacuum." *Id.*

struction. *Id.* Rather, the purpose of constraining school boards' traditional powers was "a logical incident of adopting structured English immersion." *Id.* Therefore, we found the initiative did not violate the single subject requirement. *Id.*[3] *See also In re Proposed Initiative for 1999–2000 Nos. 172–175*, 987 P.2d at 245 ("limited analysis of the meaning of each complex initiative necessary to determine what is the subject or subjects of the initiative"); *In re Proposed Initiative for 1997–98 # 30*, 959 P.2d at 823 (engaging limited inquiry to identify hidden purposes unrelated to central purpose of tax cut).

Thus, we must examine sufficiently an initiative's central theme, as expressed, to determine whether it contains incongruous or hidden purposes or bundles incongruous measures under a broad theme. With these principles in mind, we turn to Initiative # 55 to determine whether its theme, restricting non-emergency services, contains incongruous purposes.

## B. Initiative # 55

Initiative # 55, which proposes amending article V of the Colorado Constitution by adding section 51, entitled "Restrictions on Non–Emergency Services," contains three subsections. Subsection (1) comprises the substantive portion of the proposed initiative and provides:

> (1) *Except as mandated by federal law*, the provision of *non-emergency services* by the state of Colorado, or any county, city, or other political subdivision thereof, *is restricted to citizens* of and aliens lawfully present in the United States of America.

(Emphasis added.) Thus, except as mandated by federal law, this initiative would prohibit the state of Colorado and all local governments, including home rule cities, from delivering non-emergency public services to unlawfully present persons.

Subsections (2) and (3) detail implementation and enforcement mechanisms. Subsection (2) permits persons lawfully residing in

Colorado to sue for declaratory or injunctive relief to enforce section 51 and in relevant part provides:

> (2) Any person lawfully residing in the state of Colorado shall have standing to sue the state of Colorado, or any county, city, or other political subdivision of the state of Colorado, to enforce this section.

Subsection (3) provides that the legislature shall have the authority to develop implementing legislation and definitions:

> (3) The general assembly shall have the authority to implement this section by definitions and other appropriate legislation.

We observe that the theme of Initiative # 55 is restricting non-emergency services. However, the Initiative does not thereafter define "non-emergency" and "services," categorize the types of services to be restricted, or set forth the purpose or purposes of restricting non-emergency services. The only stated limit on the scope of this theme pertains to federal law.

The Initiative requires the General Assembly to implement its provisions by definitions and other appropriate legislation. However, the Initiative's passage would not serve merely as a recommendation by the voters that the General Assembly consider immigration and implement this provision as it sees fit. While subsection (3) provides that the General Assembly has implementing "authority," subsection (2) states that lawfully present persons may sue, and the courts have jurisdiction, "to enforce this section." Thus, there is both a mandate for the General Assembly to act and a mandate for the General Assembly to act consistent with the nature of the Initiative.

Although there is a requirement for the General Assembly to act, the nature of this mandate is unclear. As noted above, the Initiative declines to describe "non-emergency services" by definition, category or purpose. We cannot discern how the General Assembly or the courts would "enforce" this

---

**3.** The concurrence likewise identified the unstated purpose of reallocating the constitutional authority of school boards, but disagreed that this purpose was a logical incident of the initiative's central theme of securing public school students in English. 4 P.3d at 1106 (Martinez, J., concurring). It did not disagree, however, with the necessity of characterizing unstated purposes to determine single subject compliance. *See id.*

initiative. We do not, however, review an Initiative for single subject compliance subsequent to implementing legislation or court-ordered enforcement. Rather, the statute obligates us to undertake this task prior to the Initiative's placement on the ballot. Hence, we engage in a limited analysis of this Initiative to fulfill our duty of determining single subject compliance.

## 1. Non–Emergency Government Services

The term "non-emergency services" covers a wide field of operations. Indeed, a comprehensive list of government services is too broad to list.[4] Colorado.gov, the official site of the State of Colorado, lists 19 separate state government departments and over 200 government agencies. *See* http://www.colorado.gov/colorado/agencies.html. These 19 departments are: Agriculture; Corrections; Education; Health Care Policy and Financing; Higher Education; Human Services; Labor and Employment; Law; Local Affairs; Military and Veterans Affairs; Natural Resources; Personnel and Administration; Public Health and Environment; Public Safety; Regulatory Agencies; Revenue; State; Transportation; and Treasury. *Id.* The Colorado Department of Public Health and Environment maintains official documentation of vital events in our states, including births, deaths, marriage, and marriage dissolution. Many of these legal documents are required. *See* http://www.cdphe.state.co.us/hs/certs.asp. Government services include the court system, which resolve disputes, including civil contract disputes. Access to courts is a constitutional right guaranteeing persons initial access to effectuate viable claims for relief. *State Farm Mut. Auto. Ins. Co. v. Broadnax*, 827 P.2d 531, 535–36 (Colo.1992); Colo. Const. art. II, section 6 ("Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and jus-

tice should be administered without sale, denial or delay.").

In addition, local services typically include medical and social services such as child, adult and financial assistance programs. Local services also include administrative services, which encompass recording, registration and regulatory services. Recording services document the transfer of real property; warranty deeds and quit claim deeds conveying real estate; liens against real and personal property; assignments, judgments and court orders; and vehicle registration.

Government services achieve and facilitate a purpose or purposes. That is, a government service is not a purpose in and of itself, but the mechanism by which certain purposes are achieved. For example, providing medical and social services benefit individual welfare. Other, unrelated administrative services, such as recording the transfer of real property, facilitate economic transactions. Access to legal institutions permit parties to resolve civil disputes. Hence, providing a government service is not a "purpose." Rather, it is a means of achieving or facilitating a particular purpose or effect. With this relationship in mind, we identify some of the purposes effected by restricting non-emergency services.

## 2. Purposes of Initiative # 55

We identify at least two unrelated purposes grouped under the broad theme of restricting non-emergency government services: decreasing taxpayer expenditures that benefit the welfare of members of the targeted group and denying access to other administrative services that are unrelated to the delivery of individual welfare benefits.

First, the Initiative would prevent any public expenditure on services that benefit the welfare of individuals in the targeted group. For example, the Initiative could restrict delivery of medical and social services to persons lawfully present in Colorado. Medical and social services are funded by the taxpayers. Consequently, restricting delivery of taxpayer-funded medical and social services will decrease taxpayer burdens.

---

4. Defend Colorado Now, which represents itself as the official registrar for Initiative # 55, states the Initiative's possible effect is "too broad to list" all the services that will be restricted be-

cause "today government is so intertwined in our lives that a list of non-emergency public services would be almost endless." *See* http://www.defendcoloradonow.org/amendment/will_do.html.

Restricting government-funded medical and social services provided on behalf of the welfare of the targeted group thereby serves as the mechanism to decrease taxpayer expenditures.

Decreasing taxpayer expenditures by terminating services benefiting the individual welfare of people not lawfully present in Colorado is one purpose contained within the language of the initiative and also indicated by the website for Defend Colorado Now:

> Most Coloradans [sic], like most Americans, understand the fundamental fairness of not allowing foreign nationals residing illegally in the United States to facilitate their illegal residency *by accessing taxpayer provided services intended solely for American citizens.*

*See* http://www.defendcoloradonow.com/amendment/will_do.html (emphasis added). Likewise, in describing the purpose of Defend Colorado Now, the website states:

> The amendment will ensure *non-emergency taxpayer-funded public services* go only to those lawfully in Colorado. Persons not lawfully in the United States will be prevented in Colorado from receiving public services other than those directly related to public safety or life-threatening emergencies, and K12 education. Citizens and persons who are in the country lawfully will not be affected by this amendment.

*See id.* (emphasis added).

Second, the Initiative could restrict access to certain unrelated administrative services. Many administrative services of government that are not involved in delivery of benefits to individual welfare serve instead to organize or regulate some human interactions. Government services that regulate behavior, record information or resolve disputes may require participation by everyone to serve broader societal needs. For example, an administrative service unrelated to delivery includes a variety of recording services facilitating economic transactions between individuals, such as recording the transfer of real property.[5] Public recording provides written evidence of a conveyance. Such written evidence assures the buyer of land that the vendor has a merchantable title which he can transfer to him. John E. Cribbet & Corwin W. Johnson, *Principles of the Law of Property* 306–08 (3d ed.1989). The system also introduces the concept of a bona fide purchaser so that the bona fide purchaser takes free of prior deeds, mortgages, or leases. *Id.* Recording the deed assures the grantee that constructive notice of the conveyance exists, which cuts off the grantor's power to defeat the former's interest by a new conveyance to a bona fide purchaser. *Id.* Consequently, the inability to record a conveyance affects the marketability of a title and the rights of a bona fide purchaser. *Id.*

To the extent that this inhibits or prohibits property ownership by the target group, the Initiative would appear to modify article 2, section 27 of the constitution, which provides:

> **Section 27. Property rights of aliens.** Aliens, who are or may hereafter become bona fide residents of this state, may acquire, inherit, possess, enjoy and dispose of property, real and personal, as native born citizens.

Consequently, although the Initiative restricts the target group's access to administrative recording services, its effect is broader. In addition to affecting the target group, the Initiative also affects citizens by impairing the functions of regulatory, licensing and dispute-resolution services. For example, it would affect anyone transacting real estate business and could complicate the transfer of real property from unlawfully present to lawfully present individuals and the recording of lien interests.

### 3. Analysis

■ We conclude these two purposes—terminating services benefiting the welfare of individuals not lawfully present in Colorado

---

5. This purpose is emphasized by Defend Colorado Now. The website represents that the amendment would "restrict the County Clerk's recordation of the transfer of real property" because "[p]ersons not in the United States lawfully should not be allowed to own real property in Colorado." *See* http://www.defendcoloradonow.com/amendment/will_do.html.

and denying access to unrelated administrative services that facilitate organization and regulation—are incongruous. The theme of restricting non-emergency government services is too broad and general to make these purposes part of the same subject. The prohibition against multiple subjects serves to defeat voter surprise by prohibiting proponents from hiding effects in the body of an initiative. It also discourages placing voters in the position of voting for some matter they do not support to enact that which they do support. Initiative # 55 presents the possibility of both prohibited practices.

First, this Initiative's complexity and omnibus proportions are hidden from the voter. In failing to describe non-emergency services by defining, categorizing, or identifying subjects or purposes, the Initiative fails to inform voters of the services its passage would affect. For example, because "emergency services" are commonly defined, as Defend Colorado Now does, as including police and fire protection and emergency room medical services, a voter might well assume that the converse of "emergency" would pertain to the single subject of non-emergency medical or social services. In the absence of a definition for "services" or a description of the purposes effected by restricting non-emergency services, the additional purpose of restricting access to unrelated administrative services is hidden from the voter. Moreover, the Initiative's failure to specify any definitions, services, effects, or purposes makes it impossible for a voter to be informed as to the consequences of his or her vote. This facial vagueness not only complicates this court's attempt to understand the Initiative's subjects, but results in items being concealed within a complex proposal as prohibited by the single subject rule. See *In re Proposed Initiative for 2001–02 # 43*, 46 P.3d at 447.

Second, there no doubt exists a diversity of approaches and attitudes regarding the presence of the individuals targeted under this Initiative. Some voters may indeed wish to both reduce taxpayer expenditures for services benefiting individuals, such as medical and social services, and also restrict unrelated administrative services such as recording services that may inhibit property ownership

by targeted individuals. Other voters may find, however, they have unwittingly voted to restrict services while only wishing to reduce taxpayer expenditures for medical and social services. The common means of restricting non-emergency services insufficiently connects the subjects of reducing taxpayer expenditures and prohibiting the targeted group from participating in administrative services. Thus, the purpose of reducing taxpayer expenditures by eliminating expenditures on behalf of individual welfare for the targeted group is not dependent on and clearly related to the purpose of restricting access to administrative services.

## IV. Conclusion

We hold the Board erred in setting the title and remand to the Board with directions to strike the title and return the Initiative to its Proponents.

## APPENDIX A

Be it Enacted by the People of the State of Colorado:

**SECTION 1. Article V of the Colorado constitution is amended BY THE ADDITION OF A NEW SECTION to read:**

**Section 51. Restrictions on Non–Emergency Services.**

(1) Except as mandated by federal law, the provision of non-emergency services by the state of Colorado, or any county, city, or other political subdivision thereof, is restricted to citizens of and aliens lawfully present in the United States of America.

(2) Any person lawfully residing in the state of Colorado shall have standing to sue the state of Colorado, or any county, city, or other political subdivision of the state of Colorado, to enforce this section.

(a) Courts of record of the state of Colorado shall have jurisdiction to hear cases brought to enforce this section.

The general assembly may provide reasonable and appropriate limits on the time and manner of suits brought under this section.

(3) The general assembly shall have the authority to implement this section by definitions and other appropriate legislation.

**SECTION 2. Effective date—applicability.** This section shall take effect thirty days from the date of adjournment of the regular session of the general assembly following the proclamation of the vote by the governor, and shall apply to causes of action accruing on or after said date.

## APPENDIX B

Proposed Initiative 2005–2006 # 55 [6]

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the restriction of non-emergency government services to certain persons who are lawfully present in the United States, and, in connection therewith, restricting the provision of non-emergency services by the State and local governments to the United States citizens and aliens lawfully present in the United States, except as mandated by federal law; and providing for the implementation and enforcement of this restriction.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the restriction of non-emergency government services to certain persons who are lawfully present in the United States, and, in connection therewith, restricting the provision of non-emergency services by the State and local governments to United States citizens and aliens lawfully present in the United States, except as mandated by federal law; and providing for the implementation and enforcement of this restriction?

Hearing January 4, 2006;

Single subject approved; staff draft amended; titles set.

Hearing adjourned 2:35 p.m.

Hearing January 18, 2006:

Motion for Rehearing *denied.*

Hearing adjourned 2:53 p.m.

Justice COATS, dissenting.

Once again the majority finds a popularly-initiated proposal for amending the state constitution unsuitable for consideration by the electorate, on the ground that it contains more than one subject. I have previously noted my concerns about what I consider to be our lack of consistency in applying the single-subject requirement and our unwillingness to confine our review to the particular dangers that requirement was designed to guard against.[1] Although the majority opinion today pays homage to the requirement's dual concerns for secreting unrelated provisions and combining provisions too unpopular to succeed on their own, it understands the term "subject" to be so elastic as to give this court unfettered discretion to either approve or disapprove virtually any popularly-initiated ballot measure at will. Because I believe the single-subject requirement was adopted to protect voters from deception and fraud rather than to limit their right to make public policy directly by constitutional amendment, I respectfully dissent.

Unlike lengthy, detailed, or convoluted regulatory measures, easily capable of hiding disparate subjects or combining them solely to increase voting power, the substantive provision of Initiative # 55 contains a single mandate, clearly expressed in a single, concise sentence. Consistent with federal law, government is required to restrict non-emergency services to those whose presence in this country is lawful. The majority, however, is able to characterize even this straightforward provision as containing multiple subjects, by parsing the motivation or objective of the proponents and treating each of its component parts as a separate "subject," *see* maj. op. at 282; and by measuring the homogeneity of those subjects according to the potential impacts or effects of the amendment if the initiative succeeds, *see* maj. op. at pp. 280–81.

6. Unofficially captioned **"Restrictions on Government Services to Illegal Immigrants"** by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.

1. *In re Ballot Title 2005–2006 # 74*, 136 P.3d 237, 243–44 (Colo.2006) (Coats, J., dissenting); *In re Ballot Title 2003–2004 # 32*, 76 P.3d 460, 471 (Colo.2006) (Coats, J., dissenting).

First and foremost, the majority unself-consciously equates the constitutional requirement that each initiative be limited to a single subject with a requirement that each initiative be motivated by a single objective or purpose in the minds of its proponents. By finding (through examination of the Defend Colorado Now website) that the proponents consider it fundamentally unfair for illegal residency in this country to be facilitated by access to taxpayer-provided services and, moreover, that the services to be denied persons here illegally include not only non-emergency police, fire, and medical services but non-emergency administrative services as well, the majority concludes that the proposed measure contains at least two distinct subjects. Apparently inferring that restricting non-emergency police, fire, and medical services adversely affects the welfare of those to whom the restriction applies while restricting other kinds of non–emergency services does not, it characterizes these two purposes, or "subjects," as "decreasing taxpayer expenditures" by "terminating services benefiting the welfare of individuals" and "restricting unrelated administrative services." Maj. op. at 275; see also id. at 280–82.

Of course, the majority might just as easily have found that the proposal was motivated by a host of other reasons, including the deterrence of unlawful presence in the state, it's clear and expressed ultimate objective. The susceptibility of any group motivation or objective to being thinly sliced is limited only by the ingenuity (and desire) of the court doing the slicing. And according to the majority's logic, each such "purpose," apparently constitutes a "subject" of the initiative. The constitutional limitation itself, however, does not purport to examine the hearts of those advancing an initiative but merely prescribes the form an initiative must take for it to be considered by the electorate.

In addition, the majority suggests (without making clear precisely how) that a potential for multiple, unspecified impacts or effects also runs afoul of the single-subject requirement, maj. op. at 281, perhaps because unspecified effects themselves amount to hidden subjects, or perhaps because having a potential for multiple effects must demonstrate that any unifying theme will be too broad. But surely any provision expressed with sufficient generality to be appropriate for inclusion in a constitution will necessarily have a potential for, and be intended to have, multiple effects. Such a construction would clearly bar the due process clause or guarantees of free speech from being considered by the initiative process. Nothing in the language or history of the single-subject requirement for popular initiatives or, for that matter, the identical limitation on statutes enacted by the general assembly, remotely suggests that in addition to being limited to a single subject, a proposal can also have but one, identifiable impact or effect; and any such requirement, if applied uniformly, would preclude all but the most trivial popularly-initiated proposals.

The right of the initiative appears to have been reserved to the voters, by our constitution, precisely for the purpose of providing them with a means of overriding the policy choices of their elected representatives (as well as the constitutional interpretations of the judiciary) and a means of prescribing measures they expect will more effectively accomplish their goals. There can be little doubt that certain formalities will always be indispensable to ensure that the will of the voters is actually expressed in their vote; and regardless of the wishes of the electorate at any point in time, the law of this jurisdiction will necessarily remain subject to the supremacy of the federal constitution. I do not believe, however, that the single-subject requirement can fairly be construed to assign to this court the role of screening from the voters any measure the full impact of which it considers them unable to appreciate; nor do I believe it is possible for judicial officers, however conscientious, to apply a standard as amorphous as the majority obviously considers the single-subject requirement to be, without conforming it to their own policy preferences.

Whatever one may think of the merits of Initiative #55, when evaluated in terms of the historically and purposefully limited scope of the single-subject requirement, it

clearly treats of a single subject and therefore cannot be kept from the voters on that basis alone. I therefore respectfully dissent.

I am authorized to state that JUSTICE RICE joins in this dissent.

Justice EID does not participate.